WILLIAM GROSS t/a COLONIAL AUTO BODY, PLAINTIFF-RE-SPONDENT, v. THE TOWNSHIP OF OCEAN, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT, AND FAHOURY BROTHERS AUTO BODY, INC., A CORPORATION OF NEW JERSEY, t/a FAHOURY BROTHERS TOWING SERVICE, DE-FENDANT.

Superior Court of New Jersey
Appellate Division

Argued December 1, 1981—Decided April 5, 1982.

146

Before Judges BOTTER, ANTELL and FURMAN.

*Dennis M. Crawford* argued the cause for defendant-appellant (*Schaefer, Crawford & Hirsch,* attorneys; *Dennis M. Crawford* on the brief).

*Lee W. Shelly* argued the cause for respondent.

*Carton, Nary, Witt & Arvanitis,* attorneys for defendant, Fahoury Brothers Auto Body, Inc., relying on the brief of appellant, Township of Ocean.

The opinion of the court was delivered by

BOTTER, P. J. A. D.

The Township of Ocean invited bids for towing, at the township's request, motor vehicles that were disabled, impounded, stolen and illegally parked on township streets. A one-year contract was to be awarded to the highest public bidder. Bidders were invited to compete for the privilege of being called by the municipality to furnish towing and storage services, with the tower having the right to charge vehicle owners for the cost of the services according to an established rate schedule.[1] Only plaintiff William Gross, trading as Colonial Auto Body, and defendant Fahoury Brothers Auto Body, trading as Fahoury Brothers Towing Service (Fahoury), submitted bids. Plaintiff bid approximately $7,700; defendant Fahoury bid $13,751 and was awarded the towing contract for 1981.

Plaintiff then filed suit against the township and Fahoury seeking, among other things, a judgment declaring the township's bidding procedure "invalid as an indirect tax." An order to show cause was issued and the case was decided as a matter of law with some factual background provided in affidavits submitted by the parties. The trial judge ruled in favor of plaintiff, holding that the procedure constituted an improper and unauthorized revenue-raising scheme. We disagree with this conclusion and reverse.

In his affidavit the township manager explained the circumstances which led to the bidding process. He stated that the township has the duty to remove disabled vehicles from its streets, particularly those involved in automobile accidents. Since the township did not have the equipment and manpower to do this work, it elected to contract for its performance. Prior experience indicated that towing services would be needed in Ocean Township on 350 to 400 occasions in 1981. Since the cost of this service would exceed $4,500, public bidding was required.

---

[1]The schedule also contained a limitation on charges for minor roadside service.

*N.J.S.A.* 40A:11–4; *Kurman v. Newark,* 124 *N.J.Super.* 89 (App. Div.1973), certif. den. 63 *N.J.* 562 (1973). No minimum bids were required. A contractor would presumably bid according to the value it placed on the right to be called upon for these services, despite the limitation placed on the amount that the contractor could charge a motorist for the towing and storage services. (Apparently a tower can anticipate that some motorists will contract for body work and other repairs after being towed to his place of business.) The fee schedule was said to represent "standard towing charges allowed by insurance companies." Moreover, the specifications preserved the right of an owner to make his own arrangements for removal of his vehicle and required the contractor to advise him of that right. The township manager noted that other municipalities in New Jersey customarily bid out towing service in a similar fashion. He also noted that the municipality incurs various costs related to the subject. Police dispatchers and officers expend time in investigating and keeping records of motor vehicle accidents, and other legal and administrative costs are incurred in contracting for the service.

In response, plaintiff asserted that in 1980 Ocean Township had invited bids for towing, dividing the municipality into zones. Apparently, the contract was awarded on the basis of the lowest charge to the vehicle owner. As a result, plaintiff was given the contract in 1980 for one zone, at the rate of 99 cents a tow, and Fahoury was the successful bidder in another zone at the rate of $2 a tow.

The trial judge noted that, while the award of towing contracts "does not appear on its face to be controlled by the public bidding statute, *N.J.S.A.* 40A:11–1 *et seq.,* it has been held to be subject thereto," citing *Kurman v. Newark, supra; Schnell v. Millburn Tp.,* 127 *N.J.Super.* 155 (App.Div.1974), aff'd 66 *N.J.* 137 (1974), and *Pied Piper Ice Cream, Inc. v. Essex Cty. Park Comm'n,* 132 *N.J.Super.* 480 (App.Div.1975). He correctly noted that the contention that the practice constitutes an "impermissible charge or tax for licensing" was neither raised nor discussed

in the *Kurman* case. He concluded that the bidding procedure constituted "an improper revenue raising scheme which taxes the towing company for the right and advantage of receiving the municipally referred towing business." He also noted that the township made "no attempt to justify the $13,000 bid as being reasonably related to the costs of regulation." Consequently, judgment was entered setting aside Fahoury's contract, and this appeal followed.

█ Municipalities have no revenue-raising power except as granted by the Legislature. *Moyant v. Paramus*, 30 *N.J.* 528, 543 (1959). However, we agree with the township's contention on appeal that its bidding procedure is valid and does not constitute a tax or a license fee.

█ The essential characteristic of a tax is a compulsory contribution to the support of government, imposed upon individuals or property pursuant to legislative authority. *See Bayonne v. Murphy & Perrett Co.*, 7 *N.J.* 298, 309 (1951); *In re Oshkosh Foundry Co.*, 28 *F.Supp.* 412, 414 (E.D.Wis.1939). Regulations requiring a license to engage in certain activity apply generally to all persons engaged in a particular business, trade, profession or calling, and the license fee is ordinarily aimed at defraying the expense fairly attributable to the cost of regulation. *See Bellington v. East Windsor Tp.*, 17 *N.J.* 558, 564 (1955); *N.J.S.A.* 40:52–1 and *N.J.S.A.* 40:52–2. Here the township imposed no charge by way of a tax or license fee on all towers operating within the municipality. Towers were not required to submit a bid or to bid any minimum amount. Likewise, the regulatory aspects of the bid specifications were binding only on the successful bidder; all others could provide towing services in the township without regulation. In short, the township did not regulate the towing business generally. However, for the privilege of being called upon by the township to tow various vehicles, the successful bidder was required to accept the terms and specifications prescribed by the township. The township did not "tax" any towing company for the advantage of being called by the township police department to

perform towing services for the township; it simply granted the privilege to the highest bidder.

Municipal police officers are authorized to remove disabled, abandoned and illegally parked motor vehicles from the public streets. *N.J.S.A.* 39:3–4; *N.J.S.A.* 39:4–136; see *N.J.S.A.* 39:4–56.5. *N.J.S.A.* 39:3–4 authorizes police officers to remove from public highways and store any unregistered motor vehicle at the expense of the owner. Similarly, *N.J.S.A.* 39:4–136 provides for the removal at the owner's expense of disabled vehicles and those parked or left standing in violation of that section. See, also, *N.J.S.A.* 39:4–56.5 with regard to abandoned motor vehicles. Police officers may also seize and impound stolen vehicles incidental to their duties in investigating and prosecuting crimes. *Kurman v. Newark, supra,* 124 *N.J.Super.* at 92–93, recognized that the removal of such motor vehicles from public streets is a function that could be performed by a municipality under its police power. *N.J.S.A.* 40:48–5, discussed below, generally authorizes .a municipality to contract with private persons to provide any service which the municipality is authorized to render pursuant to *N.J.S.A.* 40:48–1 *et seq. See Schnell v. Millburn Tp., supra,* 127 *N.J.Super.* at 158. There is no statute that prevents a municipality from contracting with the highest public bidder for the privilege of being called by the police department to perform these towing services on its behalf. Contract awards for services to be paid by public users have been routinely made in the past without adverse judicial comment. *See,* for example, *Kotter v. East Brunswick Tp.,* 160 *N.J.Super.* 462 (App.Div.1978), (operating a park-and-ride facility); *Pied Piper Ice Cream, Inc. v. Essex Cty. Park Comm'n, supra* (the sale of ice cream and other refreshments at public parks); *Kurman v. Newark, supra. See also Schnell v. Millburn Tp., supra,* where a contractor was given the privilege of installing a burglar alarm communications device at its own expense at police headquarters, with charges by the contractor upon municipal residents who utilize the service. The court held that public bidding was required to allow other contractors to com-

pete for the privilege of providing the service, notwithstanding that the residents will bear the expense directly and the contract will not be paid by public funds. *Cf. McKim v. South Orange,* 133 *N.J.L.* 470 (Sup.Ct.1945).

In *Kurman, supra,* we held that the award of a towing contract must be made by competitive bidding pursuant to *N.J.S.A.* 40A:11–4, even though the municipality receives money from the successful bidder. The court reasoned that a municipality would undergo an expense if it undertook itself to remove and store disabled, abandoned and stolen vehicles from its streets. It would be obliged to expend public funds first before any money could be recouped from the vehicle owner or through auction sales of the vehicles. The court noted that the bidder who pays a municipality for the privilege of performing the service expects to make a profit. Thus, the practice is not unfair to towers. The court held that the fact that the municipality "by virtue of the proposed contract is passing the charge on to the owner, does not alter the basic fact that the work is being performed for [the municipality] by the contractor." 124 *N.J.Super.* at 93. That holding impliedly negates the contention before us that the moneys paid to the municipality constitute an illegal tax or license fee.

The trial judge's written opinion notes that in previous years the award of the towing contract was made by Ocean Township to the bidder who offered the lowest charge to motorists. The scheme for 1981 increased the charges to be paid by motorists over those established previously by the competitive bidding process. Under both schemes the municipality invited bids for the privilege of being called by a municipal employee to perform the towing services. In both instances the cost is passed on to members of the public whose vehicles are involved, although in previous years the cost to the motorist was nominal. That someone would bid a nominal charge or a charge below cost for the privilege of towing disabled vehicles simply indicates an expectation to profit through charges for unregulated services which the tower might perform for the vehicle's owner or

through the disposition of abandoned vehicles. But the motorist is not penalized by the award of the contract to the bidder who pays the municipality for the privilege of rendering the towing and storage service. This is because the regulated charges were fixed at the level of standard charges for the same services in the community,[2] and the motorist retains the right to make his own arrangements for the removal of the vehicle. No motorist can claim that the municipality must arrange to have his vehicle towed for 99 cents or some other nominal amount. If benefit is to be received from the tower, there is no reason to prefer motorists over the municipality as a representative of the public at large. We should not infer that the towing contractor will charge a motorist exorbitant rates for other services in order to compensate for the payment to the municipality. In any case, the incentive to do so would be as strong when the towing charge is only a nominal sum. There is no greater disadvantage to the motorist in one system or the other, in this respect. As for abandoned vehicles which the tower may resell, we see no reason why the tower should not bid for the privilege of disposing of such a vehicle. The public is benefited by the practice, and no one is harmed.

The court cannot choose the method that a municipality must use in dealing with disabled, stolen, illegally parked or abandoned vehicles, so long as the selected practice is not unlawful. We see no reason to require a municipality to limit itself to public bidding that will assure the lowest cost to a motorist whose vehicle is towed, so long as the regulated charges are fair and reasonable, or are comparable to prevailing charges established by market forces. We have considered the provisions of *N.J.S.A.* 40:48–5, although this statute was not called to our attention by the parties and was not relied upon by the trial

---

[2] We assume the accuracy of this allegation by the township. Neither Gross nor Fahoury asserted that the regulated charges exceeded prevailing rates established by free market forces, and no member of the public with an interest to raise that issue was a party to this action.

judge. As previously stated, the statute allows municipalities to contract for the performance of services which it is authorized to render to the public in lieu of rendering such service "at its own expense." The statute requires public bidding and the award of the contract "to the lowest responsible bidder." However, in our view the statute does not prevent the award to a bidder who *pays* the municipality the highest amount for the privilege of rendering the service to motorists in the circumstances of this case. The statute contemplates an award to the lowest bidder who *charges* a municipality for rendering the service on its behalf. However, when the municipality is to be paid *by* the contractor and is not required to pay money *to* the contractor, the successful bid will be the highest bid. In a sense the successful bidder has offered the largest negative charge to the municipality. Thus, the statute does not prevent the bidding practice employed by Ocean Township, and it does provide general authority for a municipality to contract for services the municipality could itself perform directly.[3] *See Schnell v. Millburn Tp., supra,* 127 *N.J.Super.* at 158.

Ocean Township may contract to have disabled and other vehicles removed from its streets. This proposition is accepted by the parties to this litigation. It can perform that service itself; it can contract to have someone perform the service at municipal expense, *N.J.S.A.* 40:48–5, and it can, we conclude, contract to refer this work to a given contractor at a price he is willing to pay the municipality derived through competitive bidding, on the conditions it has established. These conditions assure that motorists who bear the expense directly are not required to pay more than the usual rate for such services in the municipality and preserve the right of motorists to arrange for the removal of their vehicles at their own

---

[3]To the extent that the contract is governed by *N.J.S.A.* 40A:11–4, as held in *Kurman v. Newark, supra,* we note that *N.J.S.A.* 40A:11–6.1 allows for exceptions to the requirement that an award be made to the "lowest responsible bidder."

expense. To the extent that the tower may profit from the ultimate sale of abandoned vehicles, we see no reason why the tower should not pay for the opportunity of being placed in that position. The municipality does incur the expense of policing its streets and dealing with disabled and other vehicles. The money derived from the bidding procedure tends to offset those costs. There is no reason, therefore, to invalidate this exercise of municipal police power simply because the municipality may derive an incidental benefit from the successful bidder. The municipal action should be accorded a presumption of validity. Municipalities possess not only the powers granted them in express terms but also those incidental to powers expressly conferred, so long as they are not prohibited by the Constitution or by law. *N.J.Const.* (1947), Art. IV, § VII, par. 11. *See Quik Chek Food Stores v. Springfield Tp.*, 83 *N.J.* 438, 447 (1980); *Inganamort v. Fort Lee*, 62 *N.J.* 521, 536 (1973). We have no fear that approval of this practice with regard to towing and storing vehicles will give rise to unwarranted or improper revenue raising schemes in relation to other municipal activities.

▮▮▮▮ The statutory right of the municipality to let the contract out to the highest bidder is recapitulated as follows. As noted above, municipal police officers are authorized under *N.J.S.A. Title* 39 to remove and store various motor vehicles from public highways that are disabled, illegally parked or abandoned, and police officers may seize stolen vehicles in the course of enforcing criminal laws. *N.J.S.A.* 40:48–5 authorizes municipalities to engage private contractors for the performance of services which the municipality is authorized to perform by the provisions of subtitle 3 of Title 40. This includes the general authority in *N.J.S.A.* 40:48–2 to take any lawful action deemed necessary for the protection of persons and property, for the preservation of the safety and welfare of the public, and to effectuate the powers conferred "by this subtitle, or by any law." Although *N.J.S.A.* 40:48–5 requires the award of such contracts to the "lowest responsible bidder," the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 *et seq.*, enacted by *L.* 1971, *c.*

198, supplements or supersedes the specific bidding provisions of *N.J.S.A.* 40:48–5 to the extent that it deals comprehensively with the award of public contracts and provides specific and detailed bidding procedures.[4]   *N.J.S.A.* 40A:11–4 generally requires public bidding for materials, supplies or the performance of any work the cost of which will exceed $4,500 "to be paid with or out of public funds." Although in this case the cost of services will not be paid with public funds, nevertheless, we agree with the holding in *Kurman v. Newark, supra,* that the Local Public Contracts Law governs since the work is performed for the municipality and the legislative intent and public policy require public bidding where the cost of services contracted for by a governmental unit is expected to exceed a certain sum, regardless of the source of payments. *Schnell v. Millburn Tp., supra; McKim v. South Orange, supra.* Thus, we conclude that *N.J.S.A.* 40A:11–6.1 supersedes the literal provision of *N.J.S.A.* 40:48–5 requiring the contract to be awarded to the "lowest responsible bidder" (even if that term would include a payment to the municipality as constituting a negative bid). *N.J.S.A.* 40A:11–6.1 expressly permits exceptions from that requirement; it merely requires a statement of the reason for not awarding the contract "on the basis of the lowest quotation received." We conclude, therefore, that Ocean Township was authorized to award the contract to the highest bidder in this case. By requiring an award to the lowest bidder the statute generally contemplates payment *to* the contractor; but, in the exceptional case where the contract is let to the bidder who will *pay* the municipality for the privilege of rendering the service, public bidding requirements must allow for the award to the highest bidder. *Cf. Pied Piper Ice Cream, Inc. v. Essex Cty. Park Comm'n, supra,* 132 *N.J.Super.* at 485–486, requiring an award to the *highest* responsible bidder under *N.J.S.A.* 40A:11–4 where the public body is to receive payment *from* the contractor.

---

[4]We are aware of repealer provisions contained in *N.J.S.A.* 40A:11–38. *Cf. Capasso v. L. Pucillo & Sons, Inc.,* 132 *N.J.Super.* 473 (App.Div.1974).

The township's bidding procedure is not "an improper revenue raising scheme" beyond the limits of municipal power. Therefore, the judgment setting aside Fahoury's towing contract is reversed.

ANTELL, J. A. D. (dissenting).

The question before us is whether Ocean Township may raise revenue by auctioning off the exclusive right of first call to tow wrecked and abandoned cars and charge the owners therefor. I would answer that it may not.

Its contract with defendant Fahoury obliges the township, in exchange for $13,751, to use only Fahoury to tow and store automobiles at a fixed scale of charges to be paid by the automobile owners. Towing falls within the township's obligation to maintain the public way for the safe and free passage of vehicular traffic. I do not dispute the township's right to enter into such contracts, but it may not receive any financial benefit therefrom beyond what is required to meet necessarily related administrative expenses.

It is categorically settled that a "New Jersey municipality has no revenue-raising power except as granted by the Legislature." *Moyant v. Paramus*, 30 *N.J.* 528, 543 (1959). Although license and permit fees may be imposed to meet regulatory expenses, we are not dealing here with such an exaction. Whatever regulatory responsibilities are retained by the township, their costs have not been shown and it is not pretended that they are even colorably related to the amount of the successful bid. The latter is governed exclusively by the bidder's expectation of profit and this has nothing to do with the township's administrative duties. All that the township must do is call the successful bidder without expense to itself whenever towing services are needed. Regardless of whether the bidder's payment is characterized as a license fee, a tax, or a franchise fee, in every realistic sense its primary purpose is to nourish the municipal treasury.

Cases cited by the majority, *Kotter v. East Brunswick Tp.*, 160 *N.J.Super.* 462 (App.Div.1978); *Pied Piper Ice Cream v. Essex Cty. Park Comm'n*, 132 *N.J.Super.* 480 (App.Div.1975); *Schnell v. Millburn Tp.*, 127 *N.J.Super.* 155 (App.Div.1974), aff'd 66 *N.J.* 137 (1974), and *Kurman v. Newark*, 124 *N.J.Super.* 89 (App.Div. 1973), certif. den. 63 *N.J.* 562 (1973), are tangential to the issue before us. They considered only whether the manner in which the contracts were awarded in each of those cases violated the requirement of free, open and competitive bidding and not whether the arrangement itself was basically an unauthorized revenue-raising measure.

In *Kurman v. Newark, supra,* the towing contractor argued only that the contract was not subject to the bidding requirement of the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 *et seq.* It reasoned that because the contractor was to be paid by the motorist, not the city, the condition expressed in *N.J.S.A.* 40A:11–4 that the services "be paid with or out of public funds" was not met. The court rejected this argument, responding that "because Newark by virtue of the proposed contract is passing the charge on to the owner, does not alter the basic fact that the work is being performed for Newark by the contractor," and public bidding was therefore required. *Kurman, supra* at 93. That is all this case decided. The significance of "passing the charge on to the owner" as part of a revenue-raising measure is skirted entirely. It does not even appear to have been questioned by the parties.

Although the *Kurman* court failed to volunteer its disapproval of this kind of arrangement, that should not deter us from dealing with the issue squarely presented herein and from examining the unusual circumstances of this case. There is little doubt here that absent this contractual arrangement the towing contractor would probably charge the owner nothing for the towing service. The contractor's incentive apparently lies not in the towing fee to be earned but in the profits anticipated from the repair work likely to result and from the auctioning off of abandoned vehicles. We see this in the fact that under the

previous year's system of bidding, which was based upon the charge which the bidder would make for each individual tow, the cost of tows under the contracts awarded ranged only between $.99 and $2, depending on the distance towed. Under the present system the fixed specified charges lie between $25 and $50 plus $4 a mile, depending on the kind and size of the vehicle towed. Obviously, the contract price of $13,751 realized by the township is structured into the system's greatly increased scheduled rates which the motorist must now pay.

The township is doing more than just passing on the charge to the motorist; it is enriching itself through the inflation of that charge by an amount equal to the contractor's bid. Although this method is profitable to the contractor and the municipality it is legally flawed by the fact that there is no statutory authority for the municipality to raise revenue in this manner. This is all that is involved. As to this, the majority's only comment is to characterize the bidder's $13,751 payment as a "negative charge" and therefore not in violation of the revenue-raising proscription. I do not share their view.

I would affirm the opinion below.