891 A.2d 690 (2005)
383 N.J. Super. 298
TALCOTT FROMKIN FREEHOLD ASSOCIATES, Plaintiff,
v.
FREEHOLD TOWNSHIP, Defendant.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided October 26, 2005.
*694 Wayne J. Peck, for plaintiff Talcott Fromkin Freehold Associates.
Robert F. Munoz, Freehold, for defendant Freehold Township (Lomurro, Davison, Eastman & Munoz, P.A.) (Simon L. Kaufman and Robert F. Munoz, on the brief).
ALEXANDER D. LEHRER, P.J.Ch.

PROCEDURAL HISTORY
On April 19, 1989, defendant, Freehold Township, adopted a resolution granting Preliminary Major Subdivision Approval with variances to plaintiff developer creating a 52 lot development; 49 lots to be used for the construction of single-family residences and 3 lots to be used for storm-water detention facilities. Developer's Agreements for the project were entered into and recorded in 1991 and 1992.
Pursuant to the Township resolution and the Developer's Agreements, the developer posted performance guarantees with the Township and provided a mechanism for funding detention basin maintenance.
Ten years later, on May 21, 2002, the Township adopted three resolutions releasing the performance guarantees, subject to a condition requiring the developer to post $83,175.41 as detention basin maintenance fees pursuant to the 1989-1992 resolutions and agreements.
On November 11, 2004, the developer made a written demand that the Township release all bonds and escrow accounts. By a letter dated January 13, 2005, the township engineer informed the developer that the Township would release all bonds and cash sureties after deducting the basin maintenance fees of $83,175.41 which it did on February 11, 2005.
On May 5, 2005, the developer filed a complaint in lieu of prerogative writs challenging the validity of the Township's actions in deducting the $83,175.41 and the validity of Section 18-35.8(g) of the Township ordinances which provides:
Whenever the township is requested to accept dedication of properties to be maintained for detention or retention basin purposes which will result in the township having to expend funds in the future for the maintenance of such properties, the township shall, unless otherwise determined by the township committee, require that the property owner dedicating such property post with the township funds that will defray the estimated costs of maintenance for a 10 year period.
The developer argues that Section 18-35.8(g) of the Township ordinance is an ultra vires exercise of the power granted to a municipality under the Municipal Land Use Law (MLUL). The developer asserts the only power the Township has *695 to collect maintenance guarantees is for a period of 2 years pursuant to N.J.S.A. 40:55D-53 (a)(2). The Developer argues the 10 year requirement of Section 18-35.8(g) is therefore ultra vires and cites the unreported decision in Builders League of South Jersey v. Burlington Tp., No. BUR-L-000143-01 (Law Div. 2001) as authority.

SECTION 18-35.8(g) IS A VALID EXERCISE OF MUNICIPAL AUTHORITY AND NOT ULTRA VIRES
The power to enact and amend land use ordinances clearly has been vested in local legislative officials by N.J. Const., art. IV, subsection 6, ¶ 2, and by the MLUL, N.J.S.A. 40:55D-1 et seq. Rumson Estates v. Mayor of Fair Haven, 177 N.J. 338, 349, 828 A.2d 317 (2003); Pascack Ass'n., Ltd. v. Mayor and Coun. Washington Tp., 74 N.J. 470, 483, 379 A.2d 6 (1977); Fischer v. Township of Bedminster, 11 N.J. 194, 201, 93 A.2d 378 (1952); Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 20, 364 A.2d 1016 (1976), appeal dismissed and cert. den. sub nom., Feldman v. Weymouth Tp., 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).
A developer who challenges an ordinance is charged with the heavy burden to demonstrate that the ordinance is clearly arbitrary, capricious and unreasonable or plainly contrary to the MLUL. Pheasant Bridge Corp. v. Township of Warren, 169 N.J. 282, 289, 777 A.2d 334 (2001), cert. den. 535 U.S. 1077, 122 S.Ct. 1959 152 L.Ed.2d 1020 (2002); Bow and Arrow Manor, Inc. v. Town of West Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973); Riggs v. Long Beach Tp., 109 N.J. 601, 610-611, 538 A.2d 808 (1988); Home Builders League of So. Jersey, Inc. v. Tp. of Berlin, 81 N.J. 127, 137-138, 405 A.2d 381 (1979). The party attacking the ordinance bears the burden of overcoming the presumption of validity. The trial court's limited scope of review is a recognition of the separation of power between the judicial branch and the legislative branch. Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). See also, Bow & Arrow Manor, Inc. v. Township of West Orange, supra, 63 N.J. at 343-345, 307 A.2d 563.
When assessing the validity of an ordinance, the New Jersey State Constitution further provides that the powers granted to local municipal corporations include not only those expressed in the enabling legislation, such as the MLUL, but also those necessary or fair implication or incident to the powers expressly conferred or essential thereto and to the extent that they are not inconsistent with or prohibited by the New Jersey Constitution or the MLUL. N.J. Const. Art. IV, subsection 7, ¶ 11. Rumson Estates v. Mayor of Fair Haven, supra, 177 N.J. at 351, 828 A.2d 317. See also, Cerebral Palsy Center v. Fair Lawn, 374 N.J.Super. 437, 446-447, 864 A.2d 1184 (App.Div.2005), certif. den. 183 N.J. 586, 874 A.2d 1105 (2005).
Section 18-35.8(g) deals with stormwater management; therefore, the Court must review the other statutory and regulatory provisions applicable to determine the validity of the Township's actions. Article XIII of the MLUL governs stormwater management plans. See N.J.S.A. 40:55D-93 to N.J.S.A. 40:55D-99. The MLUL requires that a stormwater management plan be adopted, and stormwater control ordinances be enacted to implement the plan. This mandate includes provisions for drainage and stormwater detention facilities. See N.J.S.A. 40:55D-93.
In the absence of stormwater regulations promulgated by the New Jersey State Department of Environmental Protection *696 ("NJDEP"), many municipalities began providing for the maintenance of drainage facilities through local programs and ordinances pursuant to N.J.S.A. 40:55D-65(d). This law empowered municipalities to adopt reasonable standards of performance and regulations for drainage and maintenance of drainage facilities. Section 18:35-8(g) and Section 18:35.21(N)3(p) were so enacted. Section 18:35.21(N)3(p) provides:
Stormwater Management Facilities, Maintenance and Repair
1. Responsibility for operation and maintenance of stormwater management facilities, including periodic removal and disposal of accumulated particular materials and debris, shall remain with owner or owners of the property with permanent arrangements that it shall pass to any successive owner unless assumed by a government agency. If portions of the land are sold, legally binding arrangements shall be made to pass the basic responsibility to successors in title. These arrangements shall designate for each project the property owner, governmental agency, or other legally established entity to be permanently responsible for maintenance, hereinafter in this section referred to as the responsible person.
2. The applicant shall enter into an agreement with the township (or county) to ensure the continued operation and maintenance of the facility. This agreement shall be in a form satisfactory to the township attorney, and may include, but may not necessarily be limited to, personal guarantees, deed restrictions, covenants, and bonds. In cases where property is subdivided and sold separately, a homeowners' association or similar permanent entity shall be established as the responsible entity, absent an agreement by a governmental agency to assume responsibility.
3. In the event that the stormwater management facility becomes a danger to public safety or public health, or if it is in need of maintenance, the township shall so notify in writing the responsible person. From that notice, the responsible person shall have 14 days to effect such maintenance and repair of the facility in a manner that is approved by the township engineer or his designee. If the responsible persona fails or refuses to perform such maintenance and repair, the township may proceed to do so and shall bill the cost thereof to the responsible person.
Section 18:35-8(g) does not apply to all stormwater management facilities. It only applies when the developer elects to dedicate the facility and not make private maintenance arrangements such as through a homeowner's association. Here the developer selected dedication as the methodology for maintaining its detention basins at the time of the sub-division approval and Developer's Agreements. The Township agreed, relying on the developer's free, voluntary and counseled representation that it would comply with the Developer's Agreements, the resolutions approving the project, and Township ordinances.
The Township is not required to accept dedication of any improvement other than certain roadways that meet municipal standards (N.J.S.A. 40:67-23.7) and certain public utilities (N.J.S.A. 40:55D-53.6). There is no legal requirement that a municipality accept any other improvements including detention basins.
*697 Unlike Builders League of South Jersey, supra, where the municipality, by ordinance, required the developers to post maintenance escrows for all improvements, the Freehold Township ordinance only applies to dedicated facilities. Since there is no legal requirement for acceptance of the facility, the developer, and not the municipality, determines whether or not there is a maintenance fee. By offering to dedicate the basins on terms and conditions that induce the Township to accept the dedication, it voluntarily obligates itself to pay the fee. To avoid the fee, a developer may negotiate a different result or otherwise provide for the ownership of the detention basin and its maintenance.
Prior to February 2005, N.J.A.C., 5:21-7.5(f)(7)(I) required the allocation of responsibility for the maintenance of a detention basin to be by agreement between a public entity and a private owner. In Freehold Township, when a developer sought to dedicate a basin, an agreement was entered into in the form of a written developer's agreement. This was done here in 1991 and 1992.
N.J.A.C. 5:21-7.5 has recently been amended repealing the prior provisions and adopting by reference NJDEP stormwater management regulations. The regulations appear as Appendix B to the Residential Site Improvement Standards (RSIS). N.J.A.C. 7:8-5.8 provides that the design engineer should prepare a maintenance plan for the stormwater management system to be incorporated into the design of a major development.
The NJDEP guidelines require a maintenance plan and an agreement to assume responsibility for the stormwater facility or the dedication of same under applicable ordinances or regulations. The only prohibition within the regulations is the prohibition of assigning or transferring the responsibility for the maintenance to the owner or tenant of an individual property in a residential project. The remaining portions of the regulations imply the right of municipalities to accept a proposed stormwater management plan under terms satisfactory to it. The section does not prohibit a municipality from conditioning voluntary acceptance of a stormwater management facility on the basis of a reasonable contribution as set forth in the ordinances of the township.
Clearly, 18-35.8g and Section 18-35.21(N) of the Land Use Ordinance of the Township of Freehold are ordinances providing for the dedication of stormwater management facilities and how they will be maintained. They were in the past and are now in conformance with the mandates of the law and regulations promulgated thereunder.
The Court holds that Township Ordinances 18-35.8g and 18-35.21(N) are a valid exercise of municipal legislative power and are not violative of or contradictory to the M.L.U.L, N.J.S.A. 40:55D-53(a)(2), or any other authority. The Township is lawfully permitted to require the maintenance of the voluntarily dedicated and voluntarily accepted basins for a reasonable amount of time. The Court finds the 10-year requirement in the amount of $83,175.41 reasonable under these circumstances.

THE RESOLUTION APPROVING THE SUB-DIVISION AND THE DEVELOPER'S AGREEMENTS ARE VALID
In 1989, two resolutions approving the subdivision were passed. Both provided:
If the applicant has proposed to dedicate to the Township of Freehold any lot or lots within the subdivision for stormwater detention facilities, then applicant shall post with the Township of Freehold a maintenance guarantee for said facilities for a ten year period as provided *698 by the Freehold Township Land Use Ordinance and as calculated by the Freehold Township Engineer. No final development maps shall be signed by the chairman or secretary of the Planning Board until proof of posting such maintenance guarantee and other required performance guarantees have been provided.
No appeal of the approval or conditions was taken by the Developer or its predecessor in title.
On December 11, 1991, and September 10, 1992, developer's agreements were entered into and subsequently recorded. The Developer's Agreement recorded in 1991 stated:
Pursuant to Section 18-35.8(g), Ordinance No. 0-88-21 of the Revised General Ordinances of the Township of Freehold, the developer shall post a cash amount to defer the maintenance costs for the detention basin and lot to be dedicated to the Township of Freehold. The posting of such maintenance amount shall be made at the time other maintenance guarantees are posted for the project or acceptance of the lot by the municipality, whichever shall occur first.
The Developer made no reservation of any other rights and agreed to the maintenance payment as a condition of the Township's acceptance of the dedication.
The Developer's Agreement recorded in 1992 at paragraph 10 stated:
Pursuant to the Revised General Ordinances of the Township of Freehold, the developer shall post a cash amount to defray maintenance costs for the detention basin and lot to be dedicated to the Township of Freehold. The posting of such maintenance amount shall be made at the time other maintenance guarantees are posted for the project or acceptance of the lot by the municipality whichever shall occur first.
The Agreement further stated in paragraph 13:
The developer hereby specifically and unequivocally states that the agreements, conditions and amounts to be paid as agreed upon in this agreement have not been forced upon it by undue influence, coercion and are not being undertaken or paid under protest. The developers reviewed all calculations and rationale for the agreements and payments set forth herein and is undertaking them voluntarily.
The Developer's Agreement was executed and recorded, and the detention basins dedicated. The Developer neither protested nor reserved any rights.
It was not until the Township demanded the agreed upon payment for detention basin maintenance pursuant to 1989, 1991 and 1992 actions, that the developer sought, by this action, to repudiate its voluntary, counseled obligations.
The developer argues the conditions of approval and the conditions of the Developer's Agreement are invalid. The Court does not agree. The conditions imposed by a planning or zoning board on an application must be directly related and incidental to a proposed use of the land. Gayatriji v. Borough of Seaside Heights, 372 N.J.Super. 203, 210, 857 A.2d 659 (Law Div.2004). To be valid, the condition must not offend the zoning ordinance, require illegal conduct on the part of the applicant, be in the public interest, be reasonably calculated to achieve some legitimate objective of the zoning ordinance and not be unnecessarily burdensome to the landowner. See Orloski v. Planning Board of the Bor. of Ship Bottom, 226 N.J.Super. 666, 672, 545 A.2d 261 (Law Div.1988), aff'd in part 234 N.J.Super. 1, 559 A.2d 1380 (App.Div.1989).
*699 Here, it is clear that the condition of posting of the maintenance guarantee for the detention basins meets the criteria set forth in Orloski and Gayatriji. The condition does not offend any provision of the zoning ordinance, in fact, it is provided for in the zoning ordinance. The condition requires no illegal conduct on the part of the developer. The condition is in the public interest and is reasonably calculated to achieve the legitimate objective of the zoning ordinance; the maintenance of voluntarily dedicated facilities. The ordinance is not an unnecessary burden on the developer. The developer has the option to retain ownership of the detention basins or to assign maintenance to a homeowner's association. The Township's ordinance does not require dedication; therefore, the conditions of approval are valid.

THE DEVELOPER'S AGREEMENTS ARE VALID
Developer's Agreements are not the creature of statute; however, Developer's Agreements have been used for a substantial period of time in the State of New Jersey to address the terms and conditions of an approval and to allocate responsibilities, obligations, privileges and rights during construction.
Developer's Agreements have been upheld by the Courts as contracts between parties and given the same plain and ordinary meaning that is ascribed to all contracts. See, East Brunswick Sewerage Authority v. East Mill, 365 N.J.Super. 120, 125, 838 A.2d 494 (App.Div.2004). The Court should assume the validity of the provisions of these agreements as the parties are sufficiently counseled and experienced to express their intentions in clear contractual terms. Id. at 126-127, 838 A.2d 494.
The applicant had the right, until the execution of the Developer's Agreement and the dedication of the detention basins, to refuse to make the maintenance payment and to otherwise provide for the maintenance of its drainage facilities. The dedication of the drainage facilities by the developer was clearly a voluntary act with the aid of counsel. This position was reasonably relied upon by the Township. The developer can not now seek to repudiate its valid obligation after it has received all the benefits of the bargain, constructed and sold all of the homes, made its profit, and left the Township without any other remedy but to make the taxpayers assume the developer's burden.

EQUITABLE DEFENSES

THE DEVELOPER IS ESTOPPED FROM DENYING THE MAINTENANCE OBLIGATION
The developer knew or should have known that once it agreed to comply with the Township's resolutions and the Developer's Agreements, sold all of its homes, and made its profit, the Township was without a remedy, as now there is no other responsible party for maintenance, other than the taxpayers of the Township. The developer is gone and the Township cannot force the creation of a homeowners association. See, Eastern Planned Communities at Lincroft, Inc. v. Middletown Township, 235 N.J.Super. 467, 470, 563 A.2d 81 (Law Div.1989).
If the developer was dissatisfied with the resolutions, it could have applied to the Planning Board and/or the Court for relief. If the developers was dissatisfied with the Developer's Agreement it could have negotiated alternative provisions or made other arrangements for ownership and maintenance of the basins. See, Park Center v. Zoning Bd., 365 N.J.Super. 284, 839 A.2d 78 (App.Div.2004).
*700 By its conduct, the developer is estopped from denying the maintenance obligation. The doctrine of estoppel dictates one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to a party who with good reason and in good faith has relied upon such conduct. Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-504, 117 A.2d 585 (1955). Estoppel is conduct, either expressed or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law. Estoppel is grounded not on subjective intent, but rather on the objective impression created by the actor's conduct. Konopka v. Foster, 356 N.J.Super. 223, 231, 812 A.2d 363 (App.Div.2002).
Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law. Casamasino v. City of Jersey City, 158 N.J. 333, 354, 730 A.2d 287 (1999). The doctrine is designed to prevent injustice by prohibiting a party from repudiating a course of action on which another party has relied to its detriment. Mattia v. Northern Ins. Co. of New York, 35 N.J.Super. 503, 510, 114 A.2d 582 (App.Div.1955). The doctrine is invoked in the interests of justice, morality and common fairness. Palatine I v. Planning Bd., 133 N.J. 546, 560, 628 A.2d 321 (1993) quoting Gruber v. Mayor of Raritan Township, 39 N.J. 1, 13, 186 A.2d 489 (1962). The doctrine is only applied in compelling circumstances where the interests of justice, morality and common fairness dictate. Palatine I v. Planning Bd., supra, 133 N.J. at 560, 628 A.2d 321 (1993). To establish equitable estoppel, the Township must show that the developer engaged in conduct, either intentionally or under circumstances that induced reliance, and that the Township acted or changed its position to its detriment. Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984).
In Feldman v. Urban Commercial, Inc., 70 N.J.Super. 463, 474-475, 175 A.2d 683 (Ch.Div.1961), the Court stated:
Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law, and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.
Here the elements of estoppel mandate the developer be precluded from denying its maintenance obligation. The Township, in good faith, relied upon the resolutions passed, the lack of challenge and of appeal, and the counseled, voluntary Developer's Agreements. Based upon said good faith reliance, the Township accepted the dedication, without any legal obligation to do so and is now left without a remedy as the houses are built, the profit made and there is no other entity or person to meet the maintenance obligation other than the other citizens and taxpayers of the Township.

EQUITABLE FRAUD
Developer representations made in the context of securing development approval or execution of a developer's agreement can give rise to a cause of action based upon equitable fraud. Ziegler, Raskopf's the Law of Zoning & Planning, Section 71:7 (2005); See also Trinity Cemetery v. Wall Tp. 170 N.J. 39, 42-43, 784 A.2d 52 (2001) and Stafford v. Stafford Zoning Bd. 154 N.J. 62, 77-78, 711 A.2d 282 (1998). The Courts have recognized a cause of *701 action against a developer for equitable fraud based upon false representations in the zoning process related to conditions or restrictions that would be placed on a property. Ibid.
Fraud requires demonstration of five elements:
1. Material representation of a presently existing or past fact.
2. Knowledge or belief of its falsity.
3. An intent that the other party rely on it.
4. Reasonable reliance by the other party.
5. Resulting damage to the other party.
Weil v. Express Container Corp., 360 N.J.Super. 599, 612-613, 824 A.2d 174 (App.Div.2003), certif. den. 177 N.J. 574, 832 A.2d 324 (2003). Equitable fraud is similar but does not require knowledge of the falsity or an intent to obtain and undue advantage. Ibid. Thus, a party who makes a false representation will be held liable if the party made such false representation negligently or innocently. Here the conduct of the developer amounts to equitable fraud.
The representations before the Township Board and the agreed upon contents of the Developer's Agreements assured the Township that the developer would maintain the dedicated basins. Said assurances were material representations. Whether those representations were made knowingly, negligently or innocently, the representations were made with the intent that the Township would rely upon them.
The reliance of the Township on the Developer's Agreements and the conditions of approval were reasonable. If the developer was to repudiate its responsibilities under the Agreements and the approvals, only the Township would be harmed. The Township cannot cause the developer to create a homeowner's association or require any other person or entity to assume the maintenance obligation. The undisputed facts demonstrate the existence of equitable fraud as a matter of law.
If the developer's position had been disclosed earlier, the Township could have invalidated the original approvals or refused to accept the detention facilities requiring the developer to provide for maintenance by other means or not build the project.
The lack of availability of any other remedy to the Township due to developer's action, mandates equitable relief permitting retention of $83,175.41 for future basin maintenance. To do otherwise would be unjustly enriching the developer.

SECTION 18-35.8 OF THE REVISED GENERAL ORDINANCES OF THE TOWNSHIP OF FREEHOLD DOES NOT CONSTITUTE AN UNCONSTITUTIONAL AND OTHERWISE ILLEGAL FORM OF TAXATION
The developer argues that Section 18-35.8(g) of the Township Ordinance constitutes an illegal and unconstitutional tax. In so arguing, the developer claims that the amount collected under the ordinance is a revenue raising measure for the purpose of maintaining municipally owned detention facilities and constitutes a tax. Section 18-35.8 is not a tax, but rather a payment due under a voluntary, counseled option exercised by the developer and contained in a negotiated agreement.
The Developer argues that municipalities generally have no revenue raising power except those granted by the Legislature. The Developer relies upon Moyant v. Paramus, 30 N.J. 528, 154 A.2d 9 (1959) and cases thereafter discussing the difference between the charging of a fee and the imposition of a tax. Those authorities *702 are distinguishable as the payment of the fee or tax was not voluntary. Here the payment was a result of a voluntary agreement and choice made by a private party.
A tax is a compulsory contribution to support the government imposed either on individuals or property pursuant to a legislative authority. Gross v. Ocean Tp., 184 N.J.Super. 144, 445 A.2d 435 (App.Div.1982), reversed on other grounds 92 N.J. 539, 457 A.2d 836 (1983). The levy of the tax is the result of the government's relationship to the taxpayer as one of sovereign rather than one of contract. See, David J. Marchitelli, Annotation, Voluntary Payment Doctrine as a Bar to Recovery of Payment of Generally Unlawful Tax, 1 A.L.R. 6th 229 (2005).
Here the relationship of the Township to the developer is not one of sovereign and levy to support the government or the detention basins; it is one of contract based upon a non-coercive option voluntarily exercised by the developer and/or its predecessor in title. The ordinance at issue is not a tax.

THE ACTION BY THE DEVELOPER IS TIME BARRED
Judicial review of the actions of a municipality where there is no administrative appeal procedure resides in the Law Division by an action in lieu of prerogative writs. Dolan v. City of East Orange, 287 N.J.Super. 136, 142, 670 A.2d 587 (App. Div.1996).
An action in lieu of prerogative writs must be commenced no later than 45 days after the accrual of the right of review, hearing or relief claimed, except as otherwise provided in paragraph (b) of the rule. R.4:69-6(a). Thus, the developer must seek review of a planning board determination within 45 days from the publication of notice in the official newspaper of the municipality. R.4:69-6 (b)(3). The last date to appeal its approvals was in 1990, 15 years ago.
R. 4:69-6 prevents a person from sleeping on one's rights and seeking judicial relief after the passage of time and detrimental reliance of others. See Schack v. Trimble, 28 N.J. 40, 49, 145 A.2d 1 (1958) (analyzing the prior Rule). The developer failed to file an action in lieu of prerogative writ contesting (1) the granting of its preliminary major subdivision approval in 1989 with the conditions governing the detention basins, (2) the Planning Board's granting of the final major subdivision approvals on December 20, 1989 with the condition of dedication of the detention basins; and (3) the entry of the Developer's Agreements in 1991 and 1992 and the dedication of the basins.
The claims of the developer are barred for the failure to bring a timely action, pursuant to R. 4:69-6.

DEVELOPER'S CLAIMS ARE ALSO BARRED BY THE DOCTRINE OF LACHES
Laches is an equitable principle applied to a party who, without explanation or excuse, delayed in asserting a claim now stale. The delay must be unreasonable under the circumstances, and must create prejudice to the party asserting the delay. Allstate v. Howard Savings Inst., 127 N.J.Super. 479, 489, 317 A.2d 770 (Ch. Div.1974).
Implicit in the concept of inexcusable delay is the ability of the party against whom laches is asserted to perform the act or previously assert the claim which is now alleged to be barred. Matarrese v. Matarrese, 142 N.J.Eq. 226, 232, 59 A.2d 262 (E. & A.1948). The party must have had knowledge of his rights and cannot assert ignorance of the facts if such ignorance is a result of his own culpable neglect. Donnelly v. Ritzendollar, 14 N.J. 96, 108, 101 A.2d 1 (1953). The key component *703 in a claim of laches is delay. However, laches involves more than a mere lapse of time in order to support the facts. The delay must be unexplained, unexcused and unreasonable under the circumstances with prejudice to the party asserting laches as a defense. Stroebel v. Jefferson Trucking & Rigging Co., 125 N.J.L. 484, 487, 15 A.2d 805 (E. & A.1940). Thus, laches also requires prejudice resulting from delay. In re Meadowlands Communications Systems, Inc., 175 N.J.Super. 53, 63, 417 A.2d 575 (App.Div.1980). The availability of laches as a defense encourages the developer to pursue its claims diligently, which creates a fairer process for townships. Mancini v. Tp of Teaneck 179 N.J. 425, 846 A.2d 596 (2004).
All of the elements of laches are present here. The acts complained of by the developer occurred approximately 15 years ago. The developer was at all times represented by experienced, competent counsel, who knew or should have known it arguably had a valid claim. At the onset, the developer's delay in filing this claim has caused an undue prejudice to the Township, all of the houses in the development have been sold and the ability of the Township to require another methodology for management of the detention basins is unavailable. The delay is unexplained, unexcused and unreasonable under the circumstances. It has severely prejudiced the Township. The developer sat on its rights and the Township has no remedy. The doctrine of laches is a bar to the developer's claim.

THE TOWNSHIP OF FREEHOLD IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES UNDER THE DEVELOPER'S AGREEMENTS EXECUTED BETWEEN THE PARTIES.
The Developer's Agreements entered into provide:
In the event the Township is involved in any litigation or similar action, whether initiated by the Township or by others, which action relates in any way to the terms of this agreement, with the Developer's performance hereunder, the Developer agrees to pay/ reimburse the Township for all costs and expenses, including reasonable attorney's fees and expert witness fees. The Township shall have the option of having such fees taxed in the underlying action or maintaining a separate action for same.
Counsel fees may be allowed by the Court where parties have agreed thereto in advance by an agreement or contract. Satellite Gateway Com. v. Musi Dining Car. Co., 110 N.J. 280, 286, 540 A.2d 1267 (1988). In light of the fact that the contract between the parties provides that the developer should reimburse the Township for attorney's fees involved in any litigation under the agreements, the Township of Freehold is entitled to counsel fees.
The Township is directed to file an affidavit of services for this action with the court pursuant to R. 4: 42-9(8)(b) within 14 days of this decision. Developer will have 14 days thereafter to file objections, if any. If objections are filed, the court will hold a hearing as to reasonableness of the amount sought.
For the reasons and authorities stated above, the Plaintiff Developer's complaint is dismissed.
Subsequent to the opinion, on November 15, 2005 the court ordered payment of counsel fees in the amount of $15,912.94.